# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

FREDERICK LEE PITCHFORD                                    PLAINTIFF

VS.                              NO. 3:03CV00374

JOHN E. POTTER POSTMASTER GENERAL,              DEFENDANT
UNITED STATES POSTAL SERVICE

## ORDER

Pending is defendant's motion for summary judgment.  (Docket # 88). Plaintiff

has filed a response and defendant  has filed a reply.  For the reasons set forth herein, defendants'

motion is granted.

### Facts

Plaintiff, Frederick Lee Pitchford,  filed suit against the defendant, United States Postal

Service (USPS), alleging that it violated Title VII of the 1964 Civil Rights Act, 42 U.S.C.

§2000e-16 subjecting him to gender, race and reprisal discrimination and age discrimination

under the ADEA, pursuant to 29 U.S.C. § 633a..

Plaintiff is an African-American male.  His date of birth is September 6, 1949.  Plaintiff

was employed by the USPS at the Earle, Arkansas, Post Office since 1981 as a part-time flexible

clerk.  Rebecca Wooten became plaintiff's supervisor when she became Postmaster at the Earle

Post Office in December, 1998.  Wooten is an African-American woman over the age of 40.

The plaintiff filed numerous EEO complaints during his employment with the USPS,

including complaints against every Postmaster that served as the Earle Postmaster during

plaintiff's time there.

In addition to plaintiff, the Earle Post Office had one full-time clerk, Lamar Morgan, a

Caucasian male.  Morgan was guaranteed 40 hours of work per week and was assigned regular schedules under the collective bargaining agreement.  Morgan had priority in requesting leave. Plaintiff, as a part-time flexible clerk, was only guaranteed two hours of work on the days he was scheduled to work and normally worked from 6:00 am to 8:00 am.  His duties included working the window at the post office which entailed selling stamps, issuing money orders, and mailing and insuring packages.

Plaintiff always carried the maximum amount of leave (440 hours) over to the next year. Plaintiff had  to use the leave or he would lose the hours at the end of the year.  Wooten posted a notice at the beginning of 1999 to all employees that notified them to schedule their leave and that no one would get leave in December.  Postmaster Wooten stated that she continually reminded plaintiff of this over the course of the year.  Plaintiff had always taken his leave at the end of the year under other Postmasters.

Plaintiff submitted leave slips to Postmaster Wooten on September 2, 1999, requesting to take two hours of leave a day from September 8 through December 31, 1999.  USPS granted plaintiff the following leave: October 25 to the 26th, eight hours; October 28 to the 29th, seven hours; November 2 to the 5th, 20 hours; November 16 to the 19th, 25 hours; November 30 through December 3, 29.17 hours; December 7 through December 10, 28.89 hours; and December 14, two hours; and December 16, two hours.  This was a total of 122.06 hours of leave taken by the plaintiff for the pay period October 23rd to December 17th, 1999.   Plaintiff forfeited 36.94 hours of annual leave in 1999 and 56.85 hours in 1998.

Wooten denied leave requests made by Lamar Morgan, Bill Layton, Virginia Waldo, Lynn Pluckett, and Rufus Organ.  All of these employees are Caucasian and over 40 except for

Pluckett, a letter carrier.

Plaintiff asserts that full-time employees do not have priority over part-time employees for leave requests made later in the year. Plaintiff denies that Wooten asked him to turn in his leave requests almost daily beginning in 2000 or that he saw notices posted to this effect. Plaintiff denies that Wooten said he would lose his leave if he didn't make his requests early or that Wooten stated she did not want employees to take leave during the busy month of December. Plaintiff states that none of this applied to him because he had always been given December off in the past. Plaintiff points out that Rufus Organ always took December off and Organ did take three weeks off in December of 1999. Organ has never filed a discrimination case, although he was not a clerk. Plaintiff says he lost more leave in 1998, but it was because Wooten had just arrived and needed his help and he agreed to work some that December.

Wooten audited the cash drawers of all employees, including the plaintiff's, every three or four months. Morgan was found short one time and made to repay the money. Plaintiff was found short $90.16 in June, 1999, repaid the money and acknowledged his mistake. Plaintiff was short $143.69 on December 28, 1999 and repaid the money. Other Postmasters had found plaintiff short in the past and forced him to repay the money.

Plaintiff alleges that the reason he was short is because Wooten asked him to step away from his drawer to retrieve a package for a customer. Instead of opening her own drawer, she worked out of his. Plaintiff found her actions suspicious right before an audit and thinks the error could have been her mistake.

Plaintiff was scheduled for a pre-hearing telephone conference in Little Rock, on a day had been scheduled to work. Plaintiff took annual leave to attend the conference in person.

USPS eventually restored the annual leave hours taken after plaintiff attended the hearing.

Plaintiff disputes that it was scheduled as a telephone conference. Plaintiff says that he should not have been scheduled that day because three weeks before the conference he asked the post office representative to tell Postmaster Wooten he could not be at work that day and plaintiff asserts he should never have lost the leave. Plaintiff said that the conference was always intended to be in person in Little Rock and was mistakenly changed to a phone conference. Plaintiff called the Judge that morning and he confirmed that it had not been changed to a phone conference.

On the morning of January 29th, 2000, plaintiff lost the keys to the Earle Post Office while shoveling snow at home. Plaintiff was scheduled to work on Monday January 31. Morgan worked for plaintiff on Monday. Postmaster Wooten did not have contact with plaintiff again until 5:15 pm on Monday January 31 when he came in to say he had found the keys. As a result, Wooten issued a letter of warning to plaintiff on February 7, 2000, charging plaintiff with being absent without leave on Monday, January 31, 2000.

Plaintiff disputes that he was absent without leave. Plaintiff states that he called Lamar Morgan on Friday afternoon to report he had not found the keys. Morgan, who was the acting POA at the time, instructed Plaintiff to call him if he found the keys; if he did not hear from plaintiff, Morgan would come in on Saturday and Monday. Wooten never asked plaintiff to call her and she never called plaintiff. Plaintiff alleges Wooten said she did not care that plaintiff was following Morgan's instruction to not come to work.

Morgan has received a disciplinary action in the past when Postmaster Wooten issued a letter of suspension for failure to follow instructions.

Plaintiff then filed an EEO Complaint 4G-720-0055-00 alleging he was discriminated against on the basis of race, sex, and retaliation. The following issues were accepted for investigation: "1) On December 27, 1999, your request for annual leave was denied by the postmaster causing you to forfeit 37 hours of annual leave for the year; 2) on the very next day, your stock was audited and you were found to be short; 3) On February 7, 2000, you were forced to use annual leave to attend a pre-hearing conference; 4) you were issued a Letter of Warning on January 31, 2000, charging you with AWOL; and 5) On February 23, 2000, the postmaster harassed you and threatened to send you to remedial training." A Final Agency Decision finding no discrimination was issued on August 27, 2003.

On April 11, 2001, plaintiff asked for 17 hours of annual leave from April 14 through April 20. Wooten denied the request based on "needs of the service". Wooten explained that Morgan was on Family Medical Leave Act ("FMLA") leave. Wooten did not contact Morgan because of his FMLA leave. Wooten offered to let Plaintiff off the week after Morgan returned. Plaintiff turned down the offer and called in sick on the 14th and the rest of that week. Plaintiff filed EEO Complaint 4G-720-0185-01 on July 27, 2001, alleging race, sex, and reprisal discrimination in regards to the April leave denial. The complaint was accepted for investigation.

Plaintiff alleges that he had an elbow injury and could not work. Plaintiff spoke with Morgan and Morgan said he was willing to come back two days early on the 14th. Plaintiff told Wooten this and Wooten claimed she was unable to contact Morgan; plaintiff doesn't believe this since Wooten knew where Morgan lived, had his number or could have left a message on his answering machine.

5

Plaintiff was released from the doctor's care of his elbow injury on May 12, 2001. While the plaintiff was out due to his injury, a new requirement went into effect requiring that employees returning after 21 days or more of absence due to illness or injury must submit documentation of his ability to return to work without limitations. Plaintiff took the release to Wooten which stated he had no weight restrictions, except to wear a brace. Wooten said it was insufficient. Plaintiff left another release note on Wooten's desk on May 25 or 26th but did not contact the Postmaster or the Post Office. Wooten was unable to contact plaintiff and finally wrote a letter to Plaintiff on June 14, 2001 asking him to provide a medical release with restrictions listed. Plaintiff did not receive this because his mail was on hold. There was a meeting between the parties with the representative of the union on June 29, 20001. Plaintiff finally received a notice ordering him to return to work with a doctor's release dated July 5, 2001.

Wooten required the same medical documentation from Jeffrey Frisbie, a Caucasian male, when he was off for over 21 days following by-pass surgery. Lynn Pluckett, was injured, but was not required to provide the release because she was out fewer than 21 days.

Plaintiff received his Notice of Right to File Individual Complaint in EEO Complaint 4G-720-0252 by certified mail on November 1, 2001, as evidenced by the green card receipt. Plaintiff sent an EEO Complaint dated November 18, 2001 that is date stamped as received on November 24, 2001. Plaintiff's complaint should have been received by November 16th to be timely.

Plaintiff alleged race, sex, and retaliation in 4G-720-0252 as a result of Wooten's requirement that he provide medical documentation to return to work. The issue accepted for

investigation was the July 5, 2001 letter he received from Wooten requiring plaintiff to return to work on July 6, 2001 and provide medical documentation. The Final Agency Decision reported no discrimination.

On the day of plaintiff's MSPB hearing, Wooten did not schedule him for his usual 6:00 am to 8:00 am shift because she knew he had the hearing at 11:30am in Memphis that day. Wooten did schedule Morgan to work even though he had to testify that day at plaintiff's hearing. Plaintiff points out that it is only 30 minutes from Earle to Memphis. Plaintiff filed an EEO complaint, 4G-720-0074-02, alleging race, sex, retaliation and age regarding Wooten not scheduling him to work on the day of the MSPB hearing. Complaints 4G-720-0074-02 and the preceding one, 4G-720-0252-01 were consolidated.

Related to the April through July, 2001 circumstances, the plaintiff previously filed an employment discrimination case against USPS, (3:02cv340 JMM). In this case, plaintiff alleged he was discriminated against on the basis of race, sex and retaliation when Postmaster Wooten refused to allow him to return to work after being released from medical leave by a doctor from May 12, 2001 through July 6, 2001. That case was based on a MSPB decision. The MSPB ruled that plaintiff was wrongfully suspended only from May 12 to May 30. The MSPB found that the plaintiff did not provide a reasonable means of communicating with USPS after that date. When plaintiff failed to appear for depositions twice as ordered by the United States District Court, USPS's Motion to Dismiss was granted with prejudice and the District Court's dismissal was affirmed by the Eight Circuit Court of Appeals.

After the 9/11 attacks, the USPS was concerned with anthrax contamination. Plaintiff refused to step inside the Earle Post Office because he believed he had not been provided a

proper mask.  Plaintiff's failure to work was part of the charges that led to his termination.  These

issues  were litigated in a federal lawsuit, *Pitchford v. USPS*, 3:03CV00082 SWW and partially

led to the plaintiff's termination.  USPS's Motion to Dismiss was granted, and the District

Court's Order was again affirmed by the Eighth Circuit Court of Appeals.


<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged,

and, if the record in fact bears out the claim that no genuine dispute
exists on any material fact, it is then the respondent's burden to set
forth affirmative evidence, specific facts, showing that there is a
genuine dispute on that issue.  If the respondent fails to carry that
burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.


Discussion

Title VII and 42 U.S.C. § 1981 prohibit discrimination based on race.  Absent direct

evidence of discrimination, employee claims are analyzed using the three part burden-shifting

analysis set forth in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 800-806, 93 S.Ct. 1817

(1973) to establish a *prima facie* case of race or sex discrimination.  The following elements

must be proved by plaintiff:

    (1)    Plaintiff was a member of a protected group;
    (2)    Plaintiff was meeting the legitimate expectations of her employer;
    (3)    Plaintiff suffered an adverse employment action; and
    (4)    Similarly situated employees, who are not members of the protected group
were treated differently.

*Clark v. Runyon,* 218 F.3d 915 (8th Cir. 2000).

Once a *prima facie* case is established, the burden shifts and USPS must rebut the

presumption of discrimination by articulating a legitimate nondiscriminatory business reason for

its actions.  *McDonnell Douglas Corp.v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824 (1973).  Once

such a reason is produced, "the presumption disappears and the [plaintiff] bears the burden of

proving that the proffered reason was pretextual and the real reason for the [adverse employment action] was discrimination." *Thomas v. First Nat'l Bank,* 111 F.3d 64 (8th Cir. 1997).

Plaintiff contends that he was discriminated against on account of his race and gender and for reprisal, the allegations contained in EEO Agency No. 4-G-720-0055-00, when: 1) he was denied a request for annual leave in December, 1999, causing him to forfeit 37 hours; 2) his drawer was audited the next day and he was found short and he was forced to repay the amount; 3) he was forced to use annual leave to attend a pre-hearing conference; 4) he was issued a Letter of Warning on January 31, 2000 charging him with being absent without leave; and 5) he was harassed and threatened on February 23, 2000 when the Postmaster threatened to send him to remedial window training. In EEO Agency No. 4 4G-720-0185-01 plaintiff alleges race, sex, and retaliation discrimination in regards to Postmaster Wooten's denial of his April 2001, leave request. Plaintiff also alleges he was discriminated against based on race, gender, age and reprisal when Postmaster Wooten did not schedule him for his usual 6:00am to 8:00am shift on November 15, 2001, the day he had a MSPB hearing at 11:30 am in Memphis, the subject of EEO Agency No. 4-G-720-0252-01.

The court finds no direct evidence of discrimination related to any of plaintiff's claims. Direct evidence can be "[c]omments which demonstrate a 'discriminatory animus in the decisional process'". *Beshears v. Asbill*, 930 F.2d 1348 (8th Cir. 1991), *quoting Price Waterhouse*, 490 U.S. 228 at 278, 109 S.Ct. 1775, at 1805 (1989) (O'Connor, J., concurring). *Price Waterhouse* excludes "stray remarks in the workplace, . . . or statements by decision makers unrelated to the decisional process itself" *Price Waterhouse*, 490 U.S. at 277, 109 S.C.t. at 1804 (O'Connor, J., concurring).

The record reflects a series of such stray remarks.  Regarding plaintiff's age discrimination allegation, he points to conversations he claims to have had with Postmaster Wooten.  (USPS Ex. 1, p.103).   First the court notes that Postmaster Wooten is also over 40 years old and none of the alleged comments by Wooten were age related..  Assuming the conversations took place, they centered around comments about each other's eating habits.  Postmaster Wooten made fun of the plaintiff eating fruit, nuts and exercising all the time and the plaintiff was critical of the food she brought such as beef stew.  None of these remarks were made concerning a decisional process itself as explained in *Price Waterhouse*.  Plaintiff also contends he was not offended by the comments (*Id*, at p.111).

 The Court notes that plaintiff admitted Wooten never made racial comments to him and never made a negative comment to him concerning his gender.  (USPS Ex. 1, pg. 104).  Plaintiff alleges gender discrimination in every allegations of this case.  In *Nava v. Titan Wheel Corporation of Wisconsin*, 216 F.Supp.2d 882 (N.D.Iowa 2002), the district court said:

> [T]he *prima facie* case to establish gender-based employment discrimination claim generally requires that the plaintiff prove he is within the protected class, was qualified to do the job, suffered adverse employment action, and that persons of the opposite sex were not treated the same.  *See Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999).  In addition, where the plaintiff is a male, the *prima facie* involves the additional step of showing that "background circumstances" support the suspicion that the defendant is "that unusual employer who discriminates against the majority." Duffy v. Wolle, 123 F.3d 1026, 1028 (8th Cir. 1997), *cert.denied*, 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998).  Once a *prima facie* case is set forth, the defendant must articulate a legitimate, nondiscriminatory reason for its actions, which plaintiff must then rebut with evidence of pretext or discriminatory animus.  *McDonnell Douglas*, 411 U.S. at 800-06, 93 S.Ct. 1817.

*Nava* at 898.

The Court finds nothing in the record that supports plaintiff's claims that persons of the

opposite sex were not treated the same as plaintiff..  In addition, because plaintiff is a male, he must take the additional step to prove background circumstances.  *Id*, at 899.  In fact, just the opposite is shown at the Earle Post Office.  Virginia Waldo and Lynn Pluckett were the only two women employed out of seven employees.  The person most similarly situated to plaintiff was Lamar Morgan, a male.   These facts combined with the admission that Wooten never made a negative comment to him about his age make it impossible for plaintiff to establish a prima facie case for gender-based discrimination in any of the allegations set forth in his complaint.

Plaintiff satisfies the first element in establishing a *prima facie* case related to all of his allegations because he is a member of a protected group as he is African American and is over 40 years of age (age discrimination is only alleged in EEO Complaint 4G720-0074-02).

### 1.  Denial of Annual Leave Request Forcing the Plaintiff to Forfeit 37 Hours

Every employee of the Earle Post Office was put on notice on January 20, 2000 that they should put in requests to use their accrued leave for the year 2000.  (USPS  Ex. 8).  The notice reads "There will be no leave in December - only emergency leave.  I encourage each of you who has leave which needs to be taken or you will lose it in December."  On January 26, Postmaster Wooten had a conversation with plaintiff where plaintiff told her that the memo did not apply to him because he had always done this in the past.  Wooten "stressed to him that there would be no annual leave will be given in December."  Wooten states that she continually reminded plaintiff of this over the course of the year.  After having taken only eight hours of annual leave in June, on September 2, 1999, plaintiff requested  two hours of leave a day from September 8 through December 31, 1999.  Wooten granted plaintiff's request for 122.06 hours of which at least 53

hours were in December.  Organ, a Caucasian male, was granted three weeks of leave in

December but he was one of three letter carriers, and not similarly situated to a clerk.  Plaintiff

lost 37 hours at the end of the year.

USPS has shown that employees who were not members of a protected group like

plaintiff were not  treated differently.  In fact, the other employees who were all white, and two

female, were also denied leave by Wooten.  Wooten's affidavit shows that Organ was denied

leave on four occasions, (USPS Ex. 18, pg. 11, 18, 19 and 21), Waldo, a female, was denied

leave five times (USPS Ex. 18, pgs 13-17), Layton was denied once (USPS Ex. 18, pg 12),

Morgan was denied once (USPS Ex. 18, pg. 22), and Pluckett, a female, was denied once (USPS

Ex. 18, pg. 20).  In addition, there is no similarly situated employee to him as he is the only part-

time flexible clerk.  "Generally, part-time employees are not similarly situated to full-time

employees."  *Johnson v. University of Iowa*, 431 F.3d. 325 (8th Cir. 2005).  In opposing summary

judgment, plaintiff has presented no facts demonstrating that he was treated less favorably than

similarly situated non-African American employees.

The only evidence plaintiff proffers as proof of racial or sexual discrimination is that

when asked why he felt he was discriminated against because of race he stated, "[b]ecause of me

being a black man, and I was there up under her, and she was just taking advantage of me."

(USPS Ex. 1, p. 24).  When asked why Wooten, an African American herself, would

discriminate against him he said, "[b]ecause I was a forgiving, caring person, and that's why she

would do it to me." (*Id*.)  As to why plaintiff believed Wooten was discriminating against him

because of his gender, plaintiff says it was "[b]ecause it was done to me.  And by her knowing

me as a - male and my easy going ways, you know, she - that's why she done it."  Plaintiff's

statements are conclusory assertions at best and show no evidence of racial or gender discrimination by Postmaster Wooten. Given this analysis, the court concludes plaintiff is unable to prove a *prima facie* case of race or sex discrimination. Even if a *prima facie* case could be established, the parties have raised the issue of whether plaintiff can show USPS's reasons for denying annual leave because of "needs of service" is a pretext for intentional discrimination based on plaintiff's race or gender. Plaintiff had at least 11 months notice that he needed to use his leave or lose it. There is no disagreement that the busiest month in a post office is December. The court concludes with regard to plaintiff's discrimination claims plaintiff has failed to establish USPS's proffered reason for the denial is pretextual.

Plaintiff claims that Wooten retaliated against him by denying him leave because of prior EEO Complaints and federal lawsuits he filed. Wooten admits she knew of the prior complaints and lawsuits because the plaintiff himself told her about them. (USPS Ex.17, pg.2). Plaintiff also argues that the leave denial was in retaliation for a letter he wrote to Wooten's supervisor, Greg Tolliver. Plaintiff's letter to Tolliver admittedly contains complaints about "scheduling, . . .work hours, leave . . ." (USPS Ex.1, pg 104); plaintiff does not mention in his deposition or in Complaint 4-G-720-0055-00 that the letter to Tolliver contained anything concerning protected activity such as claims regarding race or gender discrimination as protected by Title VII. The Court notes that it could not find a copy of the letter in the record so it will accept plaintiff's word from his deposition about the letter's substance. The Court did review the plaintiff's letter to Mr. Tolliver dated 2/21/00 (Amended Complaint, Ex. 2) which was written after the allegations surrounding EEO Complaint 4-G-720-0055-00, except for the alleged threat of remedial training.

14

Title VII prohibits retaliation against an employee who files charges of discrimination or assists others in opposing discrimination. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliatory discrimination, a plaintiff must establish three elements: 1) he engaged in activity protected by Title VII; 2) an adverse employment action occurred; and 3) a causal connection between participation in the protected activity and the adverse employment action. *Thompson v. Bi-State Development Agency*, 463 F.3d 821 (8th Cir. 2006).

Since *Thompson*, the Supreme Court has rejected the different Circuit Courts' requirement that a plaintiff show an adverse employment action to establish a *prima facie* case of reprisal discrimination. In *Burlington Northern and Santa Fe Ry.Co. v. White*, 126 S.Ct. 2405 (2006) the Supreme Court said:

> The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. As we have explained, the Courts of Appeals have used differing language to describe the level of seriousness to which this harm must rise before it becomes actionable retaliation. We agree with the formulation set forth by the Seventh and the District of Columbia Circuits. *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006)..' " *Rochon*, 438 F.3d, at 1219 (quoting *Washington*, 420 F.3d, at 662).

> We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see Faragher*, 524 U.S., at 788, 118 S.Ct. 2275 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' "). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed.1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and " 'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson*, 519 U.S., at

346, 117 S.Ct. 843. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid*. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *See* 2 EEOC 1998 Manual § 8, p. 8-13.

. . . .

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, *supra*, at 81-82, 118 S.Ct. 998. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. Cf., *e.g., Washington*, *supra,* at 662 (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. See 2 EEOC 1998 Manual § 8, p. 8-14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra,* at 661.

Finally, we note that contrary to the claim of the concurrence, this standard does not require a reviewing court or jury to consider "the nature of the discrimination that led to the filing of the charge." *Post*, at 2420 (ALITO, J., concurring in judgment). Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

*Id*, at 2414-16.

Here, it is important to look a context and circumstances.  Here, plaintiff could have taken the leave earlier in the year, he had advance notice in the shift the way Postmaster Wooten would operate the Earle Post Office's granting of annual leave in December, and five other employees

who were not in a protected group and had not filed prior EEO complaints were also denied leave requests. A reasonable person in the plaintiff's position would have scheduled his leave earlier and avoided any harm. But for plaintiff's inaction there would have been no denial of leave.

Additionally, the Court concludes plaintiff failed to present evidence of a causal connection between the filing of prior EEO complaints and federal court cases against USPS and the denial of his annual leave request. "To prove a causal connection under the third element, a plaintiff must prove that an employer's retaliatory motive played a part in the adverse employment action. *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 896-97 (8th Cir.200)." Everyone in the Earle Post Office was put on notice in the beginning of 1999 that annual leave requests would not be granted in December. Plaintiff was denied <u>part</u> of his leave request just as five other employees had been denied leave requests by Wooten. This denial does not give rise to an inference of a retaliatory motive o the part USPS sufficient to prove a causal connection. *Id.*, at 897. In addition, the further in proximity to the adverse employment action, the less suspect the decision to terminate becomes. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003), quoting *Kipp*. In *Kipp*, the Eighth Circuit found that two months from the complaint and termination dilutes an inference of causation. *Kipp*, at 897. In the case at hand plaintiff's last complaints were in 1995 over three years before. (Plf's Amended Complaint). Plaintiff had not filed a complaint at this point under Wooten since she took over supervision of the Earle Post Office in 1998.

Even if plaintiff could prove a *prima facie* case of reprisal, USPS has shown it has a legitimate non-retaliatory reason for denying plaintiff's request to receive annual leave for the entire month of December, the most busy month for the USPS. "For a plaintiff to survive

summary judgment, she must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, at 717 (8th Cir. 1996). The plaintiff, therefore, has no retaliation claim. Summary judgment is appropriate on this claim.

**2. Plaintiff's Drawer Was Audited the Day After Postmaster Wooten Worked Out of His Cash Drawer; the Drawer was Short and He was Forced to Repay the Amount.**

USPS asks that Postmasters performs audits on cash drawers every three or four months. Plaintiff admits this and agrees that it is not unusual for a clerk to be short. Plaintiff acknowledged that he was short and reimbursed USPS for the $90.16 shortage in June of 1999. On December 28, 1999, Plaintiff was short $143.69, and as to the second prong, not meeting the legitimate expectations of his employer. Plaintiff paid the $143.69 which the Court acknowledges was an adverse employment action, as to the third prong in establishing a *prima facie* case. Plaintiff fails to meet the fourth prong as he admitted that the Postmaster audits the drawers of Morgan and Pluckett, both white and Pluckett a female, who also work as clerks. Morgan has been short and had to reimburse the USPS. Plaintiff admits that it is not unusual for an employee to be short on his cash drawer, and all employees have made a mistake working at the cash drawer at times. (USPS Ex. 1, pgs. 33 and 38).

Plaintiff alleges that Wooten worked out of his drawer for a short period the day before while plaintiff was retrieving a package for a customer and that she could have made the mistake. Plaintiff, however, provides no proof that she caused the shortage in the few minutes she was

working out of his drawer. Plaintiff claims that the Postmaster never worked out of any "white" or female clerk's cash drawers but offers no proof other than his assertions that he was treated differently.

When asked why this was race discrimination, he said "[b]ecause of me being who I am." (USPS Ex.1, pg.41). As for why he thought was being discriminated against because of his gender in this complaint plaintiff answered, "Mrs. Wooten knew that I would always give into her, just about any - - as far as anything concerning, you know, getting the job done. I wouldn't put up an argument, I'd just go along with it, hey, whatever. And she done it because she know – she knew me and she used that to her advantage" *(Id.)* The court concludes plaintiff is unable to prove a *prima facie* case of race or sex discrimination related to the finding of his drawer being short and having to reimburse the USPS.

Even if a *prima facie* could be established, the parties have raised the issue of whether the plaintiff can show USPS's reason for the audit and repayment of the shortage is a pretext for intentional discrimination base on plaintiff's race or gender. There is a legitimate non-discriminatory business reason for USPS to keep any employee accountable for shortages and to discourage them. The court concludes with regard to plaintiff's discrimination claims plaintiff has failed to establish USPS's proffered reason for the denial is pretextual.

### 3. Forced Taking of Annual Leave to Attend a Pre-hearing Conference

Plaintiff Labor Relations Specialist Carol Chappel stated in her affidavit that pre-hearing conferences are usually done telephonically, but plaintiff refused and went to Little Rock for the hearing. Postmaster Wooten was not provided any documentation of regarding the hearing and

scheduled the plaintiff to work.  The Postmaster took four hours of annual leave for plaintiff's absence which was later restored and classified as administrative leave.  The court finds that there was no adverse employment action.

In addition, no employee who is not a member of the protected group was treated differently.  Plaintiff states that Morgan was allowed to work even though he was scheduled to appear at the hearing as a witness.  The Court notes again that plaintiff is a part-time clerk and not guaranteed to work at a certain time or even every day.  Morgan was going on behalf of plaintiff as a witness only.

Plaintiff also alleges that this was retaliation for his letter to Tolliver and for not taking her side in her confrontations with Morgan.  For the reasons stated above, the Tolliver letter contains no protected activity and the issues the Postmaster had with Morgan were not protected activity.

### 4.  Letter of Warning Issued Regarding Charge of Being AWOL on January 31, 2000

Plaintiff lost his keys to the Earle Post Office while shoveling snow on Friday, January 28. Postmaster Wooten advised Plaintiff to contact her later that day.  Plaintiff was scheduled to work on Monday, January 31, 2000.  Plaintiff did not contact the Postmaster until Monday after the close of business.  Wooten tried to contact plaintiff several times and had her manager, Greg Tolliver, attempted to contact plaintiff without success.   Plaintiff argues that he had permission from Morgan not to come to work.  On February 7, 2000, Postmaster Wooten issued a Letter of Warning to plaintiff for not appearing at work on Monday.   "[N]ot everything that makes an employee unhappy is an actionable adverse action."  *Montandon v. Farmland Industries, Inc.*,

116 F.3d 355, 359 (8th Cir.1997); quoting *Smart v. Ball State Univ.*, 89 F.3d 437,441 (7th Cir. 1996).   An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.  *Duncan v. Delta Consol. Indus., Inc*, 371 F.3d 1020, 1026 (8th Cir. 2004).   Courts have found that where a Letter of Warning that does not effect a significant change in plaintiff's employment status or benefits, and was merely a warning would not lead a reasonable jury to conclude that this written reprimand is sufficient to constitute an adverse action.  *Cuenca v. University of Kansas,* 265 F.Supp.2d 1191, at 1209.  (D.Kan. 2003).

Plaintiff also fails to present facts demonstrating that he was treated less favorably than similarly situated non-African American employees. In fact, Postmaster Wooten states that Morgan, a Caucasian, was issued a Letter of Suspension for failure to follow instructions.

As for plaintiff's retaliation claim, he states in his EEO complaint, "This letter of warning was for losing my keys, not for being AWOL.  This is retaliation against me, pure and simple". (USPS Ex. 3, pg. 3).   The plaintiff clearly fails to establish a *prima facie* case of retaliatory discrimination, because losing one's keys is not activity protected by Title VII..   The court notes that this letter was issued in February, 2000, over two hears before the plaintiff was terminated and was not listed as a factor in his termination. (USPS Ex.12).  USPS is entitled to summary judgment as to the discrimination claims related to the Letter of Warning issued to plaintiff.


### 5. Threat to Send Plaintiff to Remedial Training.

Plaintiff alleges that Wooten threatened to send him to remedial training when no one else was around.  (USPS Ex. 1, pg. 62).  Wooten admits that plaintiff worked slow at times and sometimes appeared to be nonchalant about his work when waiting on customers.  (USPS Ex.6,

pg. 3).   Construing the record in the light most favorable to the nonmoving party, we will

assume that Wooten did make such a threat.   Plaintiff, however,  has failed to show an adverse

action "more disruptive than a mere inconvenience or alteration of job responsibilities".   There

was no change in employment status- a reduction in title, salary, or benefits.   *Box v. Principi*, 442

F.3d 692, (C.A.8(Mo.) 2006); quoting *Wenzel v. Missouri-American Water Co.*, 404 F.d

1038,1042 (8th Cir. 2005).   The court finds that a threat alone is not an adverse employment

action.   In addition, plaintiff fails to provide any support to show that the threat was based on

race, sex or retaliation, and thus, he is unable to make a *prima facie* case of discrimination

regarding the threat of remedial training.


### 6.  Denial of Annual Leave Request in April, 2001, EEO Complaint 4G-720-0185-01

On April 11, plaintiff submitted a leave request to Wooten for leave from April 14 to

April 20th.   Wooten denied this request based on "needs of service".   (USPS Ex. 16).   Plaintiff

filed EEO complaint 4G-720-0185-01 on July 27, 2001, alleging race, sex, and retaliation

discrimination in regards to Wooten's denial of his leave request.    Morgan, the full-time clerk,

was out on Family Medical Leave Act ("FMLA").   Wooten offered to let plaintiff off the week

after Morgan returned.   Plaintiff turned down the offer and called in sick the week he was

scheduled to work for Morgan.   An employee can only receive leave time if the other clerk is

available to work, which plaintiff admits.   (USPS Ex.18, pg.3).

The Court fails to find any adverse employment action towards the plaintiff.   The Eighth

Circuit has held that a supervisor's denial of annual leave is not an adverse employment action.

*Box v. Principi,* at 697.   Denying leave did not cause  plaintiff to suffer a material change in

employment resulting in an adverse employment action.  *Id.*   In addition, the plaintiff cannot

prove that other similarly situated employees who are not members of the protected group were

treated differently.  As discussed  above, Caucasian and female employees were all denied annual

leave requests under the supervision of Wooten.  Plaintiff's argument is misplaced where he

presents Morgan as a similarly situated person who is not a member of a protected group.

Plaintiff was asking for permission to take annual leave;  Morgan received FMLA leave time.  It

is true that plaintiff eventually was off for several weeks under the FMLA.  In this claim,

however,  plaintiff asserts he was denied an annual leave request.   The Court has considered

plaintiff's statement centered around his belief that Morgan was willing to cut his FMLA leave

short but in light of the reasoning above will not address that argument Plaintiff fails to met the

elements of his *prima facie* case of discrimination regarding the denial of leave request.

Even if plaintiff had been able to prove the elements of his *prima facie* case, Wooten's

reason for denial was "needs of service" which is a legitimate nondiscriminatory reason for her

actions.

As for the claim of retaliation, the Court notes that there was no retaliation that produced

injury or harm that could be seen as a material adversity.  *Burlington Northern and Santa Fe

Ry.Co*., at 2414–16.   USPS is entitled to summary judgment regarding the April, 2001 denial of

leave.


### 7.  Medical Documentation to Return to Work, EEO Complaint 4G-720-0252-01 & Not Permitted to Work the Day of a Hearing, EEO Complaint 4G-720-0074-02(consolidated into 4G-720-0252-01 )

Plaintiff filed EEO Complaint 4G-720-0252-01 alleging that Wooten

discriminated against him because of his race, sex, age and retaliation when she required that he provide an appropriate medical release to return to work. Plaintiff alleges that Wooten did not require the same documentation from similarly situated Caucasians, a woman, and someone under the age of 40. EEO Complaint 4G-720-0074-02 in which plaintiff alleges he was discriminated against because he was not scheduled to work on the day of his MSPB hearing.

### a. Timeliness

The Court first considers USPS's argument based on timeliness. USPS shows the plaintiff received his right to file a discrimination complaint on November 1, 2001. Plaintiff's complaint is dated November 18, 2001 (USPS Ex.20, pg.1), postmarked on November 19 (USPS Ex.20 pg.3) and it was received on November 24, (*Id.*), at least three days late as the complaint should have been postmarked by November 16th to have been timely received. Plaintiff admits this but argues that USPS waived the argument by accepting the complaint for investigation and issuing a final decision on the merits. Courts have held that if there is no finding of discrimination, the argument is not waived.

> Boyd next argues that because the Post Office accepted the complaint and began an investigation, it waived the right to contest timeliness and extended the time limit pursuant to the regulations. See 29 C.F.R. § 1613.214(a)(4) (1984). We disagree. The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation does not result in an administrative finding of discrimination. *See Saltz v. Lehman*, 672 F.2d 207, 208 (D.C.Cir.1982); *Oaxaca v. Roscoe*, 641 F.2d 386, 389-90 (5th Cir.1981).

*Boyd v. U.S. Postal Service*, 752 F.2d 410 (9th Cir. 1985).

Plaintiff cites *Bowden v U.S.* 106 (F.3d 433 (1977) in support of his waiver argument where the Supreme Court said, "we have suggested that if they not only accept and investigate a complaint, but also decide it on the merits-all without mentioning timeliness-their failure to raise the issue in the administrative process <u>may</u> lead to waiver of the defense when the complainant files suit." (emphasis added). The Court notes that in *Bowden*, the defendant failed to raise the issue in response to Bowden's suit in district court. USPS did raise as a defense in its' Answer to the Amended Complaint that plaintiff failed to timely exhaust his administrative remedies. The Court of Appeals for the Fifth Circuit has adopted the rule requiring an agency make an explicit finding of timeliness, before accepting that the agency has waived a timeliness defense. *Rowe v. Sullivan*, 967 F2d 186, 191 (5th Cir. 1992).

The Court rules that the plaintiff's complaint was not timely filed and the USPS did not waive its defense because the agency did not make a ruling on timeliness and USPS raised as an affirmative defense in its' answer that plaintiff failed to timely exhaust his administrative remedies.

### b. *Res Judicata*

Plaintiff admits in his response that the issues in EEO complaint 4G-720-0252-01 are *res judicata*. His case was dismissed with prejudice in *Pitchford v. USPS*, 3:02cv340 JMM because plaintiff failed to appear at his own deposition and failed to prosecute his case. Plaintiff now argues that the facts of the case should be admissible as evidence of discrimination. The court disagrees. The Court finds that plaintiff has already had his day in federal court concerning the arguments raised in EEO Complaints 4G-720-0252-01 and 4G-720-0074-02.

25

**c. The Merits of the EEO Complaints**.

Even if the Court had not made a finding that the plaintiff's complaints are barred because they weren't timely or *res judicata,* the Court finds that the USPS is entitled to summary judgement on the merits of the complaint.  The plaintiff alleged race, sex and retaliation in EEO Complaint 4G-720-0252-01 regarding Postmaster Wooten requiring him to provide medical documentation to return to work.  Wooten required the same documentation from white employees who were off more than 21 days.  Additionally, the court finds that a requirement that plaintiff provide medical authorization to return to work does not amount to an adverse employment action.  Plaintiff fails to provide proof that Wooten's request was in any way discriminatory and fails to establish his *prima facie* case.  Even if plaintiff had successfully established his *prima facie* case, USPS has articulated a legitimate nondiscriminatory business reasons for its' actions because the medical authorization is required by USPS policy.

Plaintiff alleged race, sex and retaliation in EEO Complaint 4G-720-0074-02 for not scheduling him to work on the day of his MSPB hearing and allowing Morgan, a Caucasian,  to work that day even though Morgan was to testify at the same hearing..  For the first time, plaintiff also alleges that USPS has discriminated against him based on his age, he provides no proof as to how he was discriminated against because of his age.  The Court notes that Wooten is over the age of 40 as was every employee at the Earle Post Office other than Pluckett, a carrier.  The Court finds no one similarly situated to plaintiff, who are not members of the protected group who were treated differently.  Plaintiff is usually scheduled to work from 6:00 am to 8:00 am and the hearing was scheduled for 11:30 am.  Again, the Court notes that plaintiff is part-time

flexible clerk and is scheduled to work as needed.  The Court finds there is no adverse

employment action.  The Court also notes that plaintiff filed an EEO Complaint for being

scheduled to work on the day of a prior EEO conference.

Complaint 4G-720-0074-02 also contains an unclear allegation about the Postmaster from

Proctor, Arkansas, coming to work at the Earle Post Office on the day of the November 15th

hearing.  Plaintiff simply states that, "the postmaster scheduled a black female Postmaster from

Proctor, AR to work at the Earle, AR Post Office as P.O.A." (USPS Ex.25, pg.2).  When

deposed, plaintiff wanted to add that the Proctor Postmaster was also called in to work for him

during the period where plaintiff refused to enter the Earle Post Office without what he

considered to be the proper masks.  (USPS Ex.1, pg.85).  The Court will not address this as it

was the subject of a prior federal lawsuit, *Pitchford v. USPS*, Case No. 3:03cv00082SWW, that

led to plaintiff's termination.  The Court fails to see how this could be construed as

discriminatory towards plaintiff, and finds there is no adverse employment action towards

plaintiff in hiring someone to come work at the Earle Post Office.

For the reasons stated above based on timeliness, *res judicata,* or the merits of the

allegations, USPS is entitled to summary judgment on the issue of plaintiff providing medical

authorization and in not being scheduled to work the day of the hearing.

### 8.  Remaining Claims

Plaintiff listed two other EEO Complaints in his Amended Complaint, 4G-720-0208-01

and 4G-720-0106-02.  Plaintiff did not include this claims among his exhibits attached to the

complaint.  In addition, when deposed, plaintiff did not mention these claims.  (USPS Ex. to

Reply to Res. To Plf's Mot. Strike)  Finally, in response to plaintiff's Response to Defendant's

Motion for Summary Judgment, USPS provided proof from the EEO Dispute Resolution that plaintiff did not file formal complaints regarding the above referenced complaints. The Court will not address these two complaints as there is no evidence to consider.

### 9. Tort Claims

To the extent plaintiff is attempting to bring a tort claim against USPS, these claims are without merit. *See Mathis v. Henderson*, 243 F.3d 446, 450 (8th Cir. 2001). "When the same set of facts supports a Title VII claim and a non-Title VII claim against a federal employer, Title VII preempts the non-title Title VII claims. " *Id.* at 451.

### 10. Conclusion

Wherefore, Defendant's motion for summary judgment (Docket #88) is granted. Any other pending motions made by the parties will be considered moot. The clerk is directed to close the case.

IT IS SO ORDERED this 30 day of March, 2007.


_____
James M. Moody
United States District Court

28